IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID LEVINE, III,**<br>            Plaintiff,<br><br>          v.<br><br>**OFFICER RAYMOND RODDEN;**<br>**OFFICER JANOSKI; CORPORAL**<br>**GALLAGHER; LIEUTENANT ANDY**<br>**BLOCK; and TOWNSHIP OF RADNOR,**<br>            Defendants. | CIVIL ACTION<br><br>NO.  15-574 |

**OPINION**

**I.     INTRODUCTION**

In this case, Plaintiff David Levine, III, a former police officer, accuses Defendants Township of Radnor ("Radnor") and four Radnor police officers, Officer Raymond, Officer Janoski, Corporal Gallagher, and Lieutenant Block (together, the "Individual Defendants"), of violating his constitutional and state rights when they arrested him for impersonating a police officer and confiscated a police badge Plaintiff earned for his police work during President Obama's 2008 inauguration.  Plaintiff sued Defendants in the Pennsylvania Court of Common Pleas.  Defendants then removed the action to this Court.  In his Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments, as well as state-law claims for false arrest, false imprisonment, malicious prosecution and conversion.  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  The Court held oral

---

[1] Defendants also ask this Court to order Plaintiff to provide a more definite statement of his allegations pursuant to Federal Rule of Civil Procedure 12(e), but, given the Court's conclusions as set forth below, there is no need for the Court to address this Motion.

argument on April 13, 2015, to clarify the parties' arguments on the motion to dismiss. For the reasons that follow, the Court grants Defendants' Motion because Plaintiff's Complaint does not allege facts sufficient to plausibly state a claim for relief under Section 1983 or Pennsylvania law.

**II.     BACKGROUND**

On or about April 12, 2012, Plaintiff was arrested near Rosemont Cab Company ("Rosemont Cab"), located in Rosemont, Pennsylvania. *Id.* ¶ 9. The police report for the arrest indicates that the Individual Defendants began to investigate Plaintiff following a complaint by a manager at Rosemont Cab that on April 11, 2015, Plaintiff "told a Rosemont Cab employee that he worked for the U.S. Treasury Department and was investigating the cab company and that he had shown this employee a gold badge and other items." *Id.* ¶ 10. While Plaintiff had served as a police officer for the U.S. Treasury Department for approximately eight years, his employment as a police officer ended in 2009. *Id.* ¶ 14.

On April 12, 2012, the Individual Defendants went to Rosemont Cab to investigate the manager's complaint. *Id.* ¶ 9. It is undisputed that at that time the Individual Defendants did not have a warrant for Plaintiff's arrest. When the Individual Defendants arrived at Rosemont Cab, Plaintiff was apparently there, although the Complaint does not explain what business Plaintiff had at Rosemont Cab that day. The Individual Defendants approached Plaintiff and frisked him for weapons. *Id.* Finding none, Plaintiff was released. *Id.* Plaintiff then walked away from Rosemont Cab to a nearby location, allegedly to make a phone call for a ride home. *Id.* ¶ 11. While in view of the Individual Defendants, Plaintiff "removed from his pocket a gold badge." *Id.* ¶ 12. After "being shown" this badge, the Individual Defendants immediately ran toward Plaintiff, detained and searched him, handcuffed him, and arrested him on charges of impersonating a police officer. *Id.* ¶ 13. The Individual Defendants seized the gold badge, along

with a security card issued by the Treasury Department, and a card issued by the Department of Defense. *Id. ¶* 15.

The Complaint alleges that the gold badge in Plaintiff's possession was issued to him for his service as a police officer during President Obama's inauguration. *Id. ¶ 19.* Following the dismissal of his charge, Plaintiff has subsequently made "numerous attempts" to retrieve his inaugural badge, but Defendants have "refused" to give it back. *Id*. ¶ 20.

The Complaint further alleges that the Individual Defendants lacked probable cause to arrest, search, or charge Plaintiff Levine. *Id. ¶* 16. However, during oral argument on Defendants' motion to dismiss, counsel for Levine conceded that the Individual Defendants did have probable cause to believe that Plaintiff had committed a crime.[2] Tr. at 13:17-18.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[2]   The Court incorporates Plaintiff's concession into its evaluation of the motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 255 n.3 (3d Cir. 2014) (holding that in deciding a motion to dismiss, District Court judges can take into account the concessions and candor of counsel at oral argument without having to first convert the motion to one for summary judgment).

unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal quotation marks omitted)).  At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, —, 131 S. Ct. 1289, 1297 (2011).

## IV.    DISCUSSION

### A.    *Section 1983 Claims*

Plaintiff alleges violations of 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments against the Individual Defendants (Count I) and Radnor (Count II).[3]  Compl. ¶¶ 26-28.  He also states that Defendants' actions "constitute false arrest, false imprisonment, malicious prosecution, illegal search, illegal seizure and illegal conversion." *Id.* ¶ 27.  In light of the parties' briefing and statements made at oral argument, the Court interprets these allegations as seeking to assert the following claims: false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment, and violation of procedural due process under the Fourteenth Amendment.

#### 1.    "Official Capacity" Claims

Plaintiff asserts all claims against the Individual Defendants in both their official and individual capacities. *Id.* ¶ 3.  "Official capacity" claims are property treated as claims against the municipality—in this case Radnor. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Stana v. Sch. Dist.*, 775 F.2d 122, 130 (3d Cir. 1985).  Accordingly, the Court will treat all claims against the Individual Defendants in their official capacities as claims against Radnor.

---

[3]   The Complaint also references an Eighth Amendment violation, *see* Compl. ¶ 1, but counsel for Plaintiff has conceded that Plaintiff is not alleging a claim based upon that Amendment.  Opp'n at 3.

### 2. Municipal Liability Claims

Plaintiff asserts a municipal liability claim, under *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978), against Radnor on a "failure-to" theory. Specifically, Plaintiff argues that his constitutional rights were violated as a result of Radnor's failure to adequately investigate, supervise, or discipline police officers accused of committing constitutional violations. *See* Compl. ¶¶ 30-33.

Radnor can be held liable here only if Plaintiff has sufficiently pleaded that it had an established policy or custom that resulted in the alleged constitutional violations at issue. *See Monell*, 436 U.S. at 694. Official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Monell*, 436 U.S. at 691). "A custom is a practice that, although not formally approved by an appropriate decisionmaker is so widespread as to have the force of law." *B.S. v. Somerset County*, 704 F.3d 250, 274 (3d Cir. 2013) (internal punctuation omitted) (citing *Bd. of County Comm'rs v. Brown.*, 520 U.S. 397, 404 (1997)). When a policy or custom concerns an alleged failure to investigate, supervise or discipline officers, as Plaintiff alleges here, liability will lie only where a constitutional violation results from deliberate indifference to the constitutional rights of persons with whom the officer comes into contact. *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014); *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Accordingly, in this case, the question before the Court is whether Plaintiff has adequately alleged that Radnor had a policy or custom of failing to investigate, supervise, or discipline "police officers accused of false arrest, false imprisonment, malicious prosecution, illegal search, [and] illegal seizure" in deliberate indifference to citizens'

constitutional rights. Compl. ¶ 30. In their motion to dismiss, Defendants argue that Plaintiff has failed to make this showing. For the following reasons, the Court agrees.

Plaintiff alleges that Radnor "was deliberately indifferent to the need for, or had a policy . . . of failing to provide an adequate system of investigation, supervision and discipline concerning complaints against police officers accused of false arrest, false imprisonment, malicious prosecution, illegal search, illegal seizure and illegal conversion of citizens' property." *Id*. Alternatively, Plaintiff also alleges that "[t]he lack of meaningful investigation, supervision, and discipline of police officers/detectives accused of misconduct was a custom so deeply ingrained as to be considered the actual policy of Radnor Township." *Id.* ¶ 31. Plaintiff's allegations are insufficient to sustain a cause of action against Radnor for the following reasons. *First*, the Complaint is utterly devoid of any allegations pointing to a specific policy or custom that allowed the claimed constitutional violation to occur. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted) ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). *Second*, the Complaint does not identify a municipal policymaker or decisionmaker who had knowledge of the constitutionally violative policy or custom. *Id.* at 658-59; *see also Santiago v. Warminster Township*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (noting Plaintiff's "obligation to plead in some fashion that [a natural person] had final policymaking authority, as that is a key element of a *Monell* claim."). *Finally*, the Complaint fails to allege any facts showing that Radnor's failure to investigate, supervise, or discipline its police officers has resulted in a pattern of similar constitutional violations such that Radnor's failure to address the deficiency amounts to a deliberate indifference to the problem. *See Connick*, 131 S. Ct. at 136 (citation omitted) ("A pattern of similar constitutional violations by untrained employees' is 'ordinarily necessary' to

demonstrate deliberate indifference for purposes of failure to train."). Apart from the single incidence of alleged police misconduct against Plaintiff, the Complaint pleads no other facts necessary to establish a municipal liability claim. *See Wood v. Williams*, 568 F. App'x 100, 105-06 (3d Cir. 2014) (upholding dismissal of failure to train claim when complaint included only one incident of potentially unconstitutional conduct that was not alleged to be "caused by an existing, unconstitutional government policy, which policy can be attributed to . . . a policymaker" (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985))).

In summary, Plaintiff's municipal liability allegations simply paraphrase the pleading standards for municipal liability. "Formulaic recitation of the elements of a cause of action will not do." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 545). "He has not presented *any* facts regarding an official policy or custom on the part of the Township that caused civil rights violations to be made against him." *Elias v. Township of Cheltenham*, No. 14-6117, 2015 WL 356966, at *4 (E.D. Pa. Jan. 27, 2015) (citations and internal punctuation omitted). Because Plaintiff does not adequately plead a custom or policy, a link between the alleged policy and a municipal decisionmaker, or a pattern of constitutional violations sufficient to demonstrate deliberate indifference, the alleged custom or policy cannot fairly be said to represent an official policy or custom warranting the imposition of municipal liability. *McTernan*, 564 F.3d at 659.

During oral argument on Defendants' motion to dismiss, counsel for Plaintiff conceded that even if the Court were to grant leave to amend the Complaint, Plaintiff would be unable to rectify its pleading deficiencies. Hr'g Tr. at 9:9-14. Accordingly, the Court shall dismiss all Section 1983 claims against Radnor with prejudice.

### 3. False Arrest and False Imprisonment

To prevail on a Section 1983 claim for false arrest or false imprisonment, Plaintiff must allege that his arrest deprived him of a constitutional right. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Generally, a plaintiff can show his constitutional rights have been violated if he was arrested without probable cause. *Groman*, 47 F.3d at 636; *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Conversely, an arrest based on probable cause cannot be the source of a claim for false arrest or false imprisonment. *Groman*, 47 F.3d at 636. In this case, the Complaint alleges that Plaintiff's rights under the Fourth Amendment to be free from false arrest and false imprisonment were violated because the Individual Defendants arrested him for a misdemeanor: (1) without probable cause; and, (2) without a warrant. Compl. ¶¶ 16-17. At oral argument, however, counsel for Plaintiff conceded that, based on the facts available at the time, the Individual Defendants had probable cause to believe Plaintiff had impersonated a police officer at the taxi company the day before his arrest. Hr'g Tr. at 13:17-18. Nevertheless, Plaintiff's counsel drew a distinction between probable cause to believe Plaintiff committed a crime, on the one hand, and probable cause to *arrest* him on the other. *Id.* at 13:22-14:3. Plaintiff's stated position is that his arrest lacked probable cause because of clearly established Pennsylvania law that an arrest for a misdemeanor committed outside the police officers' presence cannot be made without a warrant. *Id.* at 14:4-18. The Court interprets this position as requiring it to decide two issues: (1) did the Individual Defendants lack probable cause to arrest Plaintiff; and (2), if the arrest was made with probable cause, does the Fourth Amendment separately contain an "in the presence of" requirement for a warrantless arrest on a misdemeanor such that Plaintiff's constitutional rights could have been violated even if the Individual Officers had probable cause to arrest him. The Court addresses each of these questions in turn.

Contrary to Plaintiff's assertion, at least in the context of a Section 1983 claim, there is no relevant distinction between probable cause to believe an individual committed a crime and probable cause to arrest that individual for that crime. In fact, "[t]he proper inquiry in a section 1983 claim based on false arrest . . . is . . . whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman*, 47 F.3d at 634 (citing *Dowling*, 855 F.2d at 141). Moreover, "[p]robable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *Paszkowski v. Roxbury Twp. Police Dep't*, 581 F. App'x 149, 152 (3d Cir. 2014) (citing *United States v. Myers,* 308 F.3d 251, 255 (3d Cir. 2002)). Thus, Plaintiff's concession that the Individual Officers had probable cause to believe he impersonated a police officer *itself* shows that the Individual Officers had probable cause to arrest Plaintiff for that offense. The Court assumes, therefore, that Plaintiff intended to argue that his arrest was unconstitutional *even though* the arresting officers had probable cause to make his arrest because the Fourth Amendment *separately* requires a warrant for a misdemeanor committed outside the presence of the arresting officer whether or not the officer has probable cause to make the arrest.

Turning to that argument, as an initial matter, the fact that a state has enacted a law affording rights beyond those guaranteed by the Constitution does not imply a corresponding constitutional right for purposes of Section 1983. *See McMullen v. Maple Shade Township*, 643 F.3d 96, 100 n.5 (3d Cir. 2011) ("Many states have enacted laws that afford individuals protections beyond those found in the United States Constitution. But arrests made in violation of these state laws are not, in and of themselves, actionable under § 1983."). Thus, while Pennsylvania Rule of Criminal Procedure 502 prohibits warrantless arrests for misdemeanors committed outside the

9

presence of the arresting officer, Rule 502 alone does not automatically imply a similar prohibition in the United States Constitution that could become the basis for a Section 1983 claim.

At present, the law is unsettled as to whether the Fourth Amendment includes an "in the presence" requirement for warrantless arrests for misdemeanors separate and apart from the requirement that the arrest be made with probable cause. The United States Supreme Court has not ruled on the issue. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n.11 (2001) ("We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests."). There is similarly no Third Circuit precedent squarely addressing the constitutionality of warrantless arrests for a misdemeanor committed outside the presence of the arresting police officer when probable cause was present. However, the reasoning of a panel of the Third Circuit in *Hughes v. Shestakov*, 76 F. App'x 450 (3d Cir. 2003), implies a conclusion in line with the Fourth, Fifth, Sixth, Seventh, and Ninth Circuits, all of which have found that the Fourth Amendment does not impose an "in the presence" requirement in addition to the requirement for probable cause.[4] Like Plaintiff here, the plaintiff in *Hughes* argued that even though probable cause existed for his arrest, his Fourth Amendment rights were nevertheless violated because he was arrested without a warrant for a summary offense committed outside the presence of the arresting officers. *See* 76 F. App'x at 451. Noting the lack of binding precedential authority on this issue, the District Court ultimately held that the defendants were

---

[4] *See, e.g.*, *Woods v. City of Chicago*, 234 F.3d 979, 995 (7th Cir. 2000) ("[T]he Fourth Amendment does not require a warrant for a misdemeanor arrest"); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("Plainly, [Defendant] cannot be liable under § 1983 unless he violated one of [Plaintiff's] federal constitutional rights. [Plaintiff's] rights under Kentucky law, including her right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim."); *Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991) ("The United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer."); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir.1990) ("The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment ."); *Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir.1974) ("We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence.").

entitled to qualified immunity because Pennsylvania state law was not clearly established on this issue. *See Hughes v. Shestakov*, No. 00-6054, 2002 WL 1742666, at *2-3 (E.D. Pa. July 22, 2002), *aff'd*, 76 F. App'x 450.  In analyzing the Section 1983 claim, the Third Circuit panel's decision did not address whether the District Court's qualified immunity analysis was correct or not.  Rather, the court affirmed the summary judgment ruling on the Section 1983 claim for false arrest based on its own conclusion that the police officers had probable cause to arrest the plaintiff.  It therefore follows that the presence of probable cause is sufficient to defeat a false arrest or false imprisonment claim under Section 1983, even where the arrest was made without a warrant for a misdemeanor or summary offense committed outside the police officers' presence.

      Such a holding is also in line with dicta from *McMullen v. Maple Shade Township*, in which the Third Circuit examined whether there is a federally protected right to be free from an arrest purportedly made pursuant to a municipal ordinance that is alleged to be invalid on state grounds.  There, the court stated: "Many states have enacted laws that afford individuals protections beyond those found in the United States Constitution.  But arrests made in violation of these state laws are not, in and of themselves, actionable under Section 1983."  643 F.3d at 100 n.5. In reaching this conclusion, the Third Circuit cited two cases from sister circuits that have dismissed Section 1983 claims for false arrest when the plaintiff was arrested for a misdemeanor without a warrant in violation of state laws imposing an "in the presence" requirement.  *See id.* (citing *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995) (right under Kentucky law not to be arrested by officer who was not present when misdemeanor was committed does not support § 1983 claim); *Barry v. Fowler,* 902 F.2d 770 (9th Cir. 1990) (same under California law)).  The court noted that in both *Pyles* and *Barry* there was no constitutional violation because "probable cause existed independent of state law." *Id.*

11

In light of the above, the Court finds that Plaintiff's rights under Pennsylvania law, including his right to be arrested without a warrant for a misdemeanor offense only when the offense is committed in the presence of the arresting officer, are not grounded in the United States Constitution and will not support a Section 1983 claim.  Accordingly, Plaintiff's concession that the Individual Defendants had probable cause to believe he had impersonated a police officer conclusively bars his claims for false arrest and false imprisonment.  In addition, as explained in subsection IV.A.5, *infra*, even if the Fourth Amendment did impose an "in the presence" requirement, that protection is not clearly established, and thus the Individual Defendants are immune from suit under the doctrine of qualified immunity.  *See Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

### 4. Malicious Prosecution

Plaintiff also asserts a claim for malicious prosecution because the charges brought against him were ultimately dismissed.  Compl. ¶¶ 18, 27.  To prove a malicious prosecution claim, Plaintiff must show, *inter alia*, that: (1) the proceeding was initiated without probable cause; and, (2) that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding brought against him.  *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).  Defendants argue that Plaintiff's claim fails because the Individual Defendants had probable cause to arrest Plaintiff, and because Plaintiff has failed to allege a deprivation of liberty consistent with the concept of seizure.  Opp'n at 9-10.  The Court agrees.

As an initial matter, the Court's conclusion in subsection IV.A.3, *supra*, that the Individual Defendants had probable cause to arrest Plaintiff is alone sufficient to dismiss Plaintiff's malicious prosecution claim as failure to meet any element is fatal to the claim.  *See*

12

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc). However, even assuming *arguendo* that Plaintiff has alleged a lack of probable cause, Plaintiff's claim must also be dismissed because he has failed to allege facts showing a deprivation of liberty consistent with the concept of seizure. In the context of malicious prosecution claims, a deprivation of liberty is consistent with the concept of seizure only when a criminal defendant is subject to either pretrial custody or "some onerous types of pretrial, non-custodial restrictions" such as those on travel out of the jurisdiction. *DiBella*, 407 F.3d at 603. Plaintiff has not alleged such a deprivation. Accordingly, his malicious prosecution claim fails.

### 5. Qualified Immunity

Defendants argue that even if Plaintiff had stated a claim for false arrest, false imprisonment or malicious prosecution under Section 1983, these claims would still fail because the Individual Defendants are entitled to qualified immunity. Mot. at 11. The doctrine of qualified immunity protects state law enforcement officers acting within their professional capacity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citations omitted). Thus, the Court must ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and, (2) whether the law was clearly established at the time of the violation. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under this rubric, the Court finds that the Individual Defendants are shielded from suit for the Plaintiff's Section 1983 claims.

Turning to the first prong, for the reasons set forth above, the Court finds that Plaintiff has failed to allege the deprivation of a constitutional right. Even assuming that the Individual

Officers violated Pennsylvania state law by arresting Plaintiff without a warrant, Plaintiff has not alleged a constitutional violation because, as Plaintiff concedes, the Individual Officers had probable cause to make the arrest.  *See Doe v. Delie*, 257 F.3d 309, 318-19 (3d Cir. 2001) (citations omitted) ("[O]fficials do not forfeit qualified immunity from suit for violation of a federal constitutional right because they failed to comply with a clear state statute.").

Having concluded that Plaintiff has failed to establish a constitutional violation, the Court need not address the second prong.  However, given that the Supreme Court has yet to rule on the constitutionality of warrantless arrests for misdemeanors committed outside the arresting officer's presence, *see Atwater*, 532 U.S. at 354, the Court turns to prong two and finds that even if there were a constitutional right to be free from a warrantless arrest for a misdemeanor that occurred outside the presence of the arresting officer, that right is not clearly established.  Thus, the Individual Defendants are entitled to qualified immunity on the false arrest, false imprisonment and malicious prosecution claims.

### 6. Procedural Due Process

Plaintiff alleges that he was deprived of his badge without due process.  Compl. ¶ 20. Specifically, he alleges that "[d]espite dismissal of charges against plaintiff and despite numerous attempts made by plaintiff and his attorney for the defendants to return the . . . inaugural badge to plaintiff, defendants have refused to do so and have therefore both illegally obtained and illegally retained plaintiff's property without due process of law."  *Id.*  Defendant argues that this claim fails because Plaintiff has not alleged that he made any effort to pursue any available state court remedies designed for the return of property.  "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently adequate."  *Alvin v.*

*Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *see also id.* (citations omitted) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) (citation omitted).

Defendant points to Pennsylvania Rule of Criminal Procedure 588 as providing that remedy. Rule 588 provides:

> [a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Defendants further note that Rule 588 has consistently been held to "provide an adequate post-deprivation remedy when police seize property pursuant to an investigation." Mot. at 11 (citing *McKenna v. Portman*, 538 F. App'x 221, 224-25 (3d Cir. 2013) (citations omitted) (holding that Rule 588 "provides an adequate post-deprivation remedy when police seize property pursuant to an investigation.")). In *Willard v. Pennsylvania Society for the Prevention of Cruelty to Animals*, a panel of the Third Circuit held that there was no due process violation because plaintiff had failed to bring a state law tort claim or move for return of her property under Rule 588. 525 F. App'x 217, 221 (3d Cir. 2013); *see also Bane v. City of Philadelphia*, No. 09-2798, 2009 WL 6614992, at *8 (E.D. Pa. June 18, 2009) (holding that Rule 588 complies with due process by providing an adequate post-deprivation remedy); *Welsch v. Township of Upper Darby*, No. 07-4578, 2008 WL 3919354, at *5 (E.D. Pa. Aug. 26, 2008); *Taylor v. Naylor*, No. 04-1826, 2006 WL 1134940, at *4 (W.D. Pa. Apr. 26, 2006).

Here, Plaintiff does not allege that he ever filed a motion in Pennsylvania's Court of Common Pleas for a return of his property under Rule 588. Nor does the Complaint provide any reason why Plaintiff could not have pursued his post-deprivation remedy under Rule 588. Indeed, at oral argument, counsel for Plaintiff conceded that Plaintiff did not attempt to retrieve his property via state tort law or Rule 588 despite the fact that he was represented by counsel at that time. Hr'g Tr. at 30:21-31:2. Thus, Plaintiff would be unable to state a claim for deprivation of procedural due process even if he had an opportunity to amend his Complaint. Accordingly, the Court shall dismiss Plaintiff's procedural due process claim with prejudice.

### B.     *State Law Claims*

In his Complaint, Plaintiff asserts state law claims for unlawful arrest, unlawful imprisonment, malicious prosecution, failure to provide prompt medical care, and conversion (Count III). Because this Court has dismissed all of Plaintiff's federal claims over which it has original jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3), it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999); *Eberts v. Wert,* No. 92-3913, 1993 WL 304111, *5 (E.D. Pa. Aug. 9, 1993) (holding that "Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed.").

## V.     CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted, and this case shall be dismissed with prejudice. An order shall follow consistent with this Memorandum Opinion.

Dated: **May 7, 2015**              **BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____
**WENDY BEETLESTONE, J.**